Smith, J.
The plaintiff in error in this case asks for the reversal of the judgment rendered against it, on several grounds, viz: First, that the trial court erred in overruling the motion for a new trial, based on the ground that the verdict was against the weight of the evidence. Second, that it erred in the admission of evidence, over the objection of the defendant below. Third, that it erred in the general charge given to the jury, and in giving certain special charges asked by this plaintiff below, and in refusing to give sundry special charges asked by the defendant below,
The action was brought by Isaacs against the street railroad company to recover damages for a personal injury, claimed to have been received by him while riding as a passenger on one of defendant's cars, by being thrown therefrom while attempting to cross from one side of the car to the other, over the back platform of the grip car, (cable road), while the car was in the neighborhood of Rudolph street, preparatory to his leaving the car at Fair-fax avenue, which was the next street beyond Rudolph street, and that while he was on the rear platform of said car, without any negligence on his part, and by the negligence of the defendant company, in the operation of its railway, and in furnishing inadequate safeguards for the said rear platform, and unsuitable and insufficient machinery for the operation of said railway, the car was suddenly jerked forward, so that plaintiff, without any fault on his part, was violently thrown from the rear platform, falling between the grip car and the trailer attached thereto, and was dragged by said trailer along the street, and that it run partly over him. Whereby it is alleged that he was severely injured in the manner stated in the petition, and has expended $500 in being treated for his injuries, and was otherwise damaged to the amount of $20,000. The answer of the defendant denied all of these allegations.
*180 At the trial, as shown by the bill of exceptions allowed in the case, which contains all of the testimony, it appeared that when the car on which the plaintiff was a passenger, reached Rudolph street going north (Fairfax avenue being the next street), and at which the plaintiff desired to alight, he arose from his seat on the west side of the grip car, which seat was the second or third one from the rear of the car, and stepped upon the running board on that side of the car, intending to walk to the rear platform, and cross over to the east side of the car, so that he might alight at Fair-fax avenue, and from that side of the car where he would not be in danger from cars passing in the opposite direction. He gave no signal to the grip man, or to any one in charge of the train that he desired to alight at Fairfax avenue, and, so far as appears, no one had notice of his intention to leave the car. It is probable, from the evidence, that he stepped from the running board onto the rear platform, carrying a bundle in his hand, and was standing on the platform, or was crossing it to the east side, when, as he says, there was a sudden jerk of the car which threw him from the platform onto the railroad track between the grip car and the trailer which was following, and he was dragged along the track and very severely injured. There is controversy as to whether there was any such jerk of the car, this being denied by others. The railing of the rear platform of the grip car was a divided one. In the centre of the railing was an open space a foot or eighteen inches wide perhaps, and an iron chain reached from one side of the opening to the other, near the top of the railing. There is no direct testimony that we recall, as to the exact manner in which the plaintiff was thrown from the rear flat-form, but it would seem most probable that he went over the railing itself, or over the chain. We refer to this feature of the case for the reason that one of the errors assigned is, that the court erred in allowing evidence to be given, over *181 the exception of the defendant company, which had reference to the construction of the car in this respect.
Mr. Kilgour, the president of the defendant company, and also of the company which operated the Vine street cable line, was called as a witness for the plaintiff, and testified as to the mode of construction of the grip car in question, and others of the same kind in use on the road of the defendant company, and gave the reason why it was necessary that grip cars of that kind should have a divided dash board — and as to this, there was no contradictory evidence. The plaintiff then asked him if the defendant company was not then operating two kinds of cars on its road — those with a solid, and those with a divided dash-board. This was objected to, hut the witness was allowed to answer that it was doing so, and the defendant’s counsel excepted to the ruling. He further testified in answer to questions of plaintiff’s counsel, and against the exception of defendant’s counsel, that at and before the time of the accident to plaintiff, the company was putting onto said road, grip cars with solid dash-boards, and that the grip cars on the Vine street cable line did not have divided dash-boards, as they used a different kind of grip on such cars, and that for this reason it was not necessary to have divided dash-boards, as it was -sith the other kind. He was also allowed to testify that the other company, (Vine street cable), had abandoned the divided dash-board six or seven years before the time of this accident. He also testified in answer to the questions .of defendant’s counsel, that in other cities, as Chicago or Pittsburg, the same kind of grip cars and divided dashboards have been in use, and that it was a perfectly, safe method — -and we recall no evidence tending to show that it was not entirely safe.
It was probably the aim of the counsel for the plaintiff in offering evidence of the kind objected to, to obtain testimony which would give ground for an argument to the jury, *182 or which would raise an inference that the defendant company was negligent in the use of this kind of a dash-board, for the reason that another company in the same city did not use a car with that kind of a dash-board, and that the defendant company itself recognized the danger of it by ceasing to construct new cars of that kind. We incline to the opinion that such an inference could not properly be drawn from the evidence so submitted, standing alone. The mere fact that another company in like business used a different kind of car, or that the defendant company itself used some cars of a different kind in this respect, would not have a tendency tc show that the divided dash-board was dangerous, or that the company in changing from that kind admitted that it was. This should be shown in a different way. While we question the propriety of its admission, we think the evidence received was not prejudicial to the rights of the defendant company.
It is also urged that the court erred in permitting the plaintiff to offer evidence tending to prove that the cars of the defendant company for several years prior to this accident, as was known to the plaintiff, were accustomed to make a very short stop at Fairfax avenue, where he desired to alight, and not a sufficient time to allow passengers to leave the car in safety. This evidence was admissible, W8 think, as tending to throw light upon the question whether the conduct of the plaintiff in leaving his seat, while the car was in motion and in attempting to walk backwards upon the running board, and perhaps across the rear platform was, or was not negligent, and whether he acted as a reasonably prudent man would do under the circumstances.
It is further objected that the court over the exception of defendant’s counsel, allowed evidence of this kind to go to the jury: Firñt, by a partner of the plaintiff, that services like those rendered by the plaintiff to the firm of which he was a member, as a salesman and otherwise, before he was *183 injured, were worth $4,000 to $5,000 per year, and that owing to his disabled condition after.the accident, they were worth one-third less — and that since then such services were not so valuable to the partnership by one-third; and second, that by reason of this diminution in the value of his services to the firm, it had been agreed by the members of he partnership, that he was to receive each year the sum of $600 less than was provided for by the original contract.
As to the first of these questions we may say that there is some question whether such partner who testified as to the value of the services of the plaintiff, before and after the injury, was qualified to speak on those points. To say the least, his evidence was not at all satisfactory on the subject. But as we are of the opinion that such evidence from a person having knowledge on the subject, would be competent and proper, we are not willing to say that the court erred to the prejudice of the defendant in receiving it. As to the second exception, we are of the opinion that the court was not justified in receiving evidence as to an agreement made between the members of the firm after the accident, as to what amount should be deducted from his share of the business on account of his disabled condition. Of course, it may be shown in a case of this kind, that the injury complained of, lessens the earning capacity of the plaintiff, and- the amount it is lessened may be shown by competent evidence, so that the jury may have some data on which to estimate the amount of damages really sustained by him, and thus to compensate him for the injury. It may be a question of doubt and difficulty to know always the proper way to do this. We think it may be done by showing what such services as were rendered by this plaintiff to the firm of which he was a member, or to others were worth — how much they would probably command in the market, before he was injured, and afterwards. But we think it would be going too *184 far to allow evidence that by an agreement of his, he abated a. certain amount from the sum before received, on account of Ms injury. We think this is the effect of the decision in the case of R. R. Co. v. Gardner, 45 Ohio St., 309. Though the cases are very different, we think the principle there stated excludes such evidence,
It is also urged, that the trial court erred in admitting certain evidence of the wife of the plaintiff offered by him.
The question arises in this way: Willetts, the gripman, ■was called as a witness in chief by the defendant company and examined as to the circumstances surrounding the accident, the construction of the rear platform and dash-board. He was then cross-examined by plaintiff’s counsel, and was asked if he had not called upon the plaintiff after the accident, and made certain statements to him as to what occurred at the time of the accident differing from the statements made by him on the stand, and as to the insufficient time he had to make the round-trip, and that passengers were ■not given time enough to get off of the cars, All of these he denied, On re-examination by defendant’s counsel he testified that Mr, Isaacs in that interview told him he blamed no one for the accident, and that it was occasioned by his own fault.
By way of rebuttal of these statements said to have been made by the plaintiff, his wife was called, and was allowed to give the whole conversation, as she claimed it to be, between her husband and the gripman, denying that Isaacs made any such admission that he was to blame for the accident, purporting to give Isaacs’ version to the gripman of ho.w the accident occurred.
The object of calling Mrs. Isaacs was, of course, to impeach the testimony of Willetts as to the admission of Isaacs, that he was in fault himself, and in other respects. To do ■this it was proper, we think, for the witness to state everything that was said in the conversation between the parties *185 on the subject. The plaintiff might have contented himself by having Mrs. Isaac state that no such admission was ever made. But he was not limited to this, but might go further and show exactly what was said. Of course, what Isaacs then said as to the way in which the accident occurred, was not evidence of the fact, and the court might properly have so said to the jury; but it was all competent as bearing on the credit to be given to the testimony of Willetts as to the alleged admission of Isaacs as to his being at fault.
In the general charge given to the jury, the court after stating certain general rules as to the case, and the caution required of a carrier of passengers for hire in the management of its trains and the use of proper cars and machinery in the operation of the same, used this language, which was excepted to by the defendant, and is claimed to be erroneous:
“If the jury believes from all the evidence that the plaintiff received an injury as stated by him, while riding on the car6 of the defendant, by .reason of the negligence of the defendant company, in the operation of its railway; and by reason of furnishing inadequate safeguards for the rear platform, and unsuitable and insufficient machinery for the operation of this railway, as alleged in his petition, and that while riding thereon, he did all that an ordinarily prudent and careful man would do under the same or similar circumstances, and that he did nothing to contribute to his own injury, then those facts will make a prima facie case of negligence against the defendant. And the burden of proof will be on the defendant to show that it, by its agents and servants, did use all reasonably practicable care and precaution to prevent such injury. ”
We do not see what the defendant company has to complain of in this charge. In effect it is simply^this, that if the jury finds from the evidence that the defendant was negligent in the manner stated, and the plaintiff was injured without his fault, it made a prima facie case of negligence. We think the court might properly have gone further, and have instructed the jury that in such case the’plaintiff was «ntitled^to recover.
*186 Questions of greater difficulty arise when we come to the consideration of certain special charges given by the court to the jury at the request of counsel for the plaintiff below; and the refusal of the court to give certain charges asked by the defendant company. The first to be looked at is No. 1, given at the instance of plaintiff’s counsel, which reads as follows:
“It being admitted that the defendant is a carrier of passengers; that on the occasion mentioned in the petition tbe plaintiff was a passenger on defendant’s train, having paid his fare as stated, it was the duty of the defendant to carry him safely to the point of his destination without injury: And when it is shown that the defendant failed to carry the plaintiff safely to the place of his destination, and that plaintiff was without fault on his part, this failure puts the defendant prima facie in the' wrong, and the burden of proof devolves upon it to show that the injury was the result of a pure accident, and that it could not have been prevented by the exercise of the utmost care and skill which prudent men are accustomed to employ under similar circumstances.’ ’
It seems to ua that this charge as given, states the law too strongly against the defendant company. It says that it was the absolute duty of the defendant company to carry the plaintiff safely to the place of his destination, without injury — 'and if it fails to do so, the plaintiff being without fault, prima facie there is negligence on tbe part of the company. Can this be so? Suppose a passenger upon .a car, either accidentally or by design, is shot by someone standing on the sidewalk, or in a sudden affray on the cars, one passenger stabs another, and nothing else appears, does the law presume negligence on the part of the company? We know of no rule which goes so far as this.
As we understand, the supreme court of this state has never made a ruling on this exact question. In the case of R. R. Co. v. Morey, it is held in the syllabus of the case, that
*187 ‘‘On the trial of an action against n railroad company by a passenger for an injury received through a collision of the trains of the company, a prima facie presumption of negligence arises against the company”.
And in the decision of the case, Judge Boynton, who an-' bounced it, says:
‘‘ Whether a presumption of negligence arises in all cases against a railroad company from the mere fact that an accident has occurred from which a passenger receives an injury, while being carried over the road of the company, - is a question not arising in the present case, and is, therefore, not determined”,
But proceeds to state the law as set down in the syllabus, as to collision between the trains of the company, which certainly does aud ought to raise such presumption. Nor have subsequent decisions to that court gone to the extent claimed,
It is true that in this same case, one of the errors assigned was, that in the trial of the case in the court of common pleas, a charge of the court almost, or entirely identical with the one in this case, which we have referred to, was given, and exception taken thereto at the time, and the giving the same assigned as error, The judgment of the common pleas, however, was affirmed by the supreme court; but in view of what was said by Boynton, in the decision, and of the holding of the court in the syllabus, we think that it cannot be held that the court intended to or did approve the language of the charge as given, In that case, the injury to the plaintiff was-caused by a collision of two trains of the company on the one track, which, it is expressly held, raises the prima facie presumption of negligence on the part of the company, while the court expressly declines to say whether such presumption of negligence arises in all cases where a passenger is injured, and as before stated, we are of opinion that it does not- — that thia *188 would be going too far. That there should be some proof offered by a plaintiff, of negligence on the part of a carrier of passengers causing the injury, other than the mere fact that a passenger is injured in transit, before a plaintiff cam recover, or the carrier be put on his defense. It would seem clear to us that in the cases heretofore supposed of a passenger on a car being shot from the sidewalk by mischance, or where he is stabbed by a fellow passenger, that mere proof of these facts would not raise a presumption of negligence on the part of the carrier, and yet this is the rule laid down by the charge in question.
We are also of the opinion that for somewhat the same reasons, the trial court erred in giving to the jury so much of the second special charge asked for by the plaintiff, as reads as follows:
“The jury is instructed that if the plaintiff was, without fault on his part, injured by being thrown from the back platform of the grip car under the trailer, such fact raises a presumption in this case for which defendant is liable’.
And we think it very questionable whether the remainder of said second charge was sound. And the same objection applies to the third special charge given by the court, for the reason that the jury thereby was instructed that if the plaintiff, without fault on his part, was thrown from the back platform of the car, by a sudden jerk or lurch of the car in its operation, that the jury had a right to presume that the defendant was guilty of negligence. To justify such presumption of negligence, we think there ought to be evidence tending to show that such sudden jerk or lurch, was caused by some negligence on the part of the company in the construction of its cars or road, or in the operation thereof.
We think, too, that the court erred in refusing to give the special charges asked for by defendant, Nos. 8, 6 and 9.. .
For these reasons the judgment of the court of com -. *189 mon pleas will be reversed and a new trial awarded.
Kittredge & Wilby and Paxton, Warrington & Boutet for Plaintiff in Error.
Thomas McDougall, contra